May it please the court. Counsel, good morning. I'm Assistant Attorney General Matthew Becker, on behalf of the Respondent Board. Your Honor. Before you go far into this, so I understand what we're fighting about, the instruction as used by the trial court, I mean the state trial court, the attempt during the voir dire to talk to them about how to define reasonable doubt was an error, was it? As a matter of state law, Judge Bauer, it definitely was an error. It was. It is not only a state law saying that you don't instruct them. There is a specific part of the instructions approved by the Supreme Court that say you don't talk about it at all, isn't there? You don't instruct. The judges cannot make up a definition of reasonable doubt. Well, you can't give a definition that departs unreasonably. From what? I think it very specifically says you do not instruct on the definition. The German jury instructions approved by the Supreme Court that the judge does not give such an instruction. In Illinois, that's definitely the law. And there are federal jurisdictions. That's where we were in Illinois, aren't we? Yes, we are. Okay. And the reason for that is because the two words, reasonable and doubt, are in common usage. Everybody, we use them not just in that sense. We use them in context. They're not specifically related to law. I think that's one of the main rationales that's cropped up. Well, that's because you can't. Why define something that is already defined by itself? Which of the two terms requires something else? Reasonable or doubt? Well, in general, I tend to believe that the terms are self-defining, but it's also quite clear, Judge Bauer, that under Victor against Nebraska, a state court may say something about the concept of reasonable doubt. What may they say? Well, that's not sharply delineated by federal law, but whatever they say. Well, that's sharply delineated in Illinois law and then moved to federal law. In the Seventh Circuit, at least, it's very carefully delineated. The three states involved in this cannot use to define reasonable doubt for the reason that it defies definition. Almost any definition you give steps into something else that requires further definition. So let's start with the idea that, appropriately, the judge should have not discussed the matter at all. That is our starting point under state law. Good. So what we're arguing about only is whether or not it is harmless error. If you're going to justify what he did, then go ahead, but I haven't yet to hear it. Okay. Well, as a technical matter, I probably wouldn't use the vocabulary of harmless error because we know from Sullivan and Victor and the like that if you had a federal constitutional error in this area, it wouldn't be subject to harmless error. Do you know of any federal case where the Supreme Court or even the Court of Appeals  Yes, Your Honor, in the sense that in Victor v. Wisconsin. No, not in the sense. Specifically in instruction approved. Approved? No, but there are jurisdictions that have plenty of approved definitions or longer explanations. Wisconsin. It's a common practice. Yes, Your Honor. Wisconsin, for example. Yes, Your Honor. Or Indiana. And many other states. And there are federal jurisdictions. There's a federal judicial center instruction. We're going to discuss harmless error as opposed to this is a good idea. Obviously, Illinois' position is that this is not a good idea, especially because we've taken these kinds of definitions off the table in Illinois. Amen. Amen. But not as a matter of federal constitutional law. But not as a matter of federal constitutional law. We would not be here, though, if the trial judge in the state level had not stepped his foot in it. That's probably correct, Judge Bauer. I think one of the drawbacks, if we're being very pragmatic in trying to define reasonable doubt, is, of course, that it tees up this litigation, whereas we know that there's kind of a safe harbor in federal constitutional law that if you don't say anything to illuminate the concept or explain or define it, then you're in the safe zone. But reasonable doubt instructions are neither required nor prohibited by the due process clause of the federal constitution. That's correct, Judge Sykes. So that's the starting point here as a matter of federal law. And the constitutional question that the state appellate court needed to look at and did look at, albeit in some places somewhat inartfully, was whether these voir dire remarks so contradicted or undermined reasonable doubt that there was a reasonable likelihood that the jurors would have applied some lower standard. And that likelihood wasn't realized here. One of the things to remember about this is that my opponent's argument depends a certain amount on this idea that there's a gap in the record, that we don't know what kind of hand gesture the judge might have used in state court while shedding some light on reasonable doubt. And one important thing to remember about that record gap is that it can't be construed against the state. Petitioner had an opportunity to object in state court. State law would have given him a basis for an objection. He could have considered submitting affidavits in either a post-trial motion or in a post-conviction claim. In a post-conviction petition, he definitely could have submitted affidavits from someone describing these gestures. And instead, he decided to proceed on a silent record on that point in the appellate court. And it's true that the appellate court decided to overlook his state law forfeiture of these issues by failing to object, but that doesn't excuse him of responsibility for failing to develop the facts. So to the extent that that matters to his argument, he must lose. And this is no different than one of the stun belt claims this court has sometimes encountered where what you expect in part is for the petitioner to submit affidavits from someone saying, I saw a bulge and we're aware of something that might have been a stun belt. But in the face of silence, that can't work in his favor. Another thing to remember here about the state appellate court's discussion is that as you were hinting at, Judge Bauer, it's well established in Illinois that reasonable doubt needs no definition. And it is improper as a matter of Illinois law for the court or counsel to attempt it. And that's why if you're looking at the appendix bound with our brief at page A45, and I'm at paragraph 50 of the state appellate court's decision there. So again, page A45 of the appendix. The court explains reasonable doubt shouldn't be defined in Illinois. The attempt at a definition, if that's what it was, was improper. We must therefore consider whether these comments require reversal. So the discussion of harmless error and prejudice and all of those kinds of things in the state court's decision doesn't really take away from the force of its point on the sort of victor theory, that question of reasonable likelihood of the jurors misunderstanding. Right. The victor theory, the actual federal constitutional violation as opposed to the state law violation was briefed in the case, as I understand it. Yes, it was. And the state appellate court's decision kind of muddles the two. Never got there. So I disagree, Judge Hamilton, with the idea that it never got there. I'm looking at page A47 of our appendix. And it's the beginning, and I know it's just a sentence, but it's a very clear sentence at the beginning of paragraph 54. The court says, We do not believe that the court's comments during voir dire could reasonably be construed as inviting the jury to convict defendant based on less than the reasonable doubt standard. Then it goes on to say, Moreover, the subsequent remarks cured any possible error. So the inquiry that they're applying to the remarks themselves is really a victor-type inquiry. That's the best spin you can put on it, I agree, from your standpoint. But the petitioner, Adorno, in his brief, clearly set out a federal due process claim as well as these other state law claims for errors. And I just don't see the state appellate court ever engaging. The comment that you're relying on comes both immediately after and immediately before discussions of Illinois case law dealing with what we might call stray remarks of judges, not jury instructions on the issue of reasonable doubt. So I frankly have trouble seeing how this is not contrary to Supreme Court law because they simply looked at the wrong line of cases. That doesn't mean the state loses on de novo review. We'll talk with the defense about that. But I'm really troubled by this failure ever to engage with the federal due process standard that was briefed quite clearly for them. May I respond? Please. Okay. So, Judge Hamilton, I agree that it's a very terse way of addressing the issue, and I agree that they didn't cite the federal issues. But nonetheless, I really don't see another fair way to interpret the sentence I'm referring to. Nonetheless, as you've alluded to, another potentially easy way to decide the case is to do it de novo. I get that. But if you read that sentence in paragraph 54 as, we really mean Victor, although we're not going to cite it, the next sentence is flatly contrary then to federal due process analysis, right? Because the court is considering cures of errors or harmless error, which under the federal standard is not permitted in this. So that's why I have trouble with the lifeline that you've sent to the Illinois Appellate Court on this. I see the trouble, Judge Hamilton, although if you're putting yourself in their shoes, I think starting from their premise that this is error of multiple varieties, it makes it a little easier to understand why that kind of harmless error concept creeps in. Oh, totally. I clearly get that. As a matter of state law, they had to talk about that. But that makes it hard for me to think that they're actually looking at the federal due process standard. And I think maybe they're taking early against PAC or to its limits, but I think we're still there. But again, the sort of assumption that de novo review applies and that we win on it is another perfectly permissible way to come out in this case. I should probably close by asking you to reverse the district court's decision.  Thank you, Your Honor. Mr. Magrisso. May it please the Court, John Magrisso for Mr. Adorno. The district court's decision in this matter is correct. You have a low, well-modulated voice. I apologize, Your Honor. The district court's opinion in this matter is correct. I'm asking this court to affirm that decision. The trial court's preliminary instruction on reasonable doubt was improper in that the trial court told the jurors that they could determine guilt of a criminal defendant, of Mr. Adorno, by looking not at the quality of the evidence presented by the state against the defendant, but the amount of evidence presented and doing what he referred to as a weighing of the evidence. And that is the antithesis of the reasonable doubt standard, which is a looking at the quality of the evidence presented against a criminal defendant by the finder of fact and determining is that evidence credible. The judge really, these remarks in the opening instructions at the top of voir dire didn't really, he wasn't, and never did, attempt to define reasonable doubt. He was explaining the civil burden preponderance and what it means in terms of the quantum of evidence, etc. And then saying this is not that. So he's ruling out that. That's how I interpret these remarks and I think how a reasonable jury would interpret these remarks. He's not attempting a definition of reasonable doubt. And that is, I'm not trying to entirely agree with what you're saying, Your Honor, but that is sort of the problem here in that he does explain what the preponderance standard is and before doing so he says, Illinois does not define reasonable doubt, but here's another burden of proof and here's how to look at it. And he then goes on to say, excuse me, that's the definition of preponderance and Illinois doesn't define reasonable doubt. That's up for you to decide, but this is an example of how you weigh evidence. And instead of distinguishing what reasonable doubt is and that unlike the preponderance standard, where you weigh and he makes some gestures at scale, he just sort of leaves it on... They're not being conflated. Clearly he's not conflating the two burdens. He is attempting to distinguish it. That's the only interpretation that these remarks will bear. He's not trying to say that they're the same. No, I agree. He's not saying they're the same, but he's not explaining for the jury, for the finder of fact, how they differ. And that is what leaves the jury with the impression... The due process question under Victor is whether there's a reasonable likelihood that the jury would have understood this as a relaxation of the burden of proof beyond a reasonable doubt. And respectfully, it is, because it leaves the jury with an understanding that to make a determination of guilt, one must weigh the evidence, not describing how, but the one description of how to weigh evidence the trial judge gives is the preponderance standard, which is a quantitative look at the evidence. The judge does not explain that that is not what's required in a determination of guilt in a criminal trial. That's not what reasonable doubt demands of the finder of fact. So he leaves the jury with the impression that whatever reasonable doubt is, it's a quantitative weighing of evidence. And then to further confuse or perpetuate the failing on the reasonable doubt instruction, he then explains once again, not only does the state not define it, but it's up for you to decide in words what that is. And never goes back in final instructions throughout the course of the trial, but to explain that this is what reasonable doubt requires of you, that you are to look at the quality of the evidence presented and determine if it proves to you beyond a reasonable doubt of this person's guilt. He never returns to the preponderance standard, the civil standard. He just sort of leaves it there at the start. Well, probably because the Illinois law prohibits him from offering a definition. Exactly. And at the very start, the very outset of the trial, he introduced that to the jury in trying to define for them to explain to them what a reasonable doubt standard is, a standard of advances. And that is the violation of Mr. Dorn's due process. Are you suggesting, counsel, that a judge who tries to differentiate between the civil and criminal standards is violating the due process clause? In every instance, not necessarily. I know in my brother's brief, there's the reference to Judge Ginsburg's concurrence, but that's a distinguishable definition from what this judge gave in that concurrence. Well, what attempts to define reasonable doubt has the Supreme Court found violated the due process clause? What I have found is when you look at Sullivan, look at Cage, it's not a matter that I've found comes up, because quite frankly, this is not an issue that should be difficult or that I believe is. Well, it shouldn't be, but I've got to tell you, in just about every jury selection I ever did as a trial judge, I'd ask about prior jury experience, and as soon as I got an answer about somebody who'd been on a civil jury, if I'm picking a criminal jury, that became my teachable moment to explore how the judge had instructed them in that and then try to use that as an opportunity to point out this is a much higher standard, et cetera. I hope I didn't use scales, given the debate that we have here, but it's a very common practice in trial courts to try to make sure jurors understand that there is a difference. And so I'm looking for case law that would say, here's an attempt that went off the rails to the extent that it violates due process. What I have, as far as what we've briefed, and that's why I suggest it, is what we will stand on in this, because I have not found much, is Solvin v. Louisiana in the Cage case as well. I have not found much on this issue, and I suggest, again, not having ever been in front of you in the trial court, Your Honor, not knowing how you specifically present the issue, but I suggest it is how it's presented. In this case, the judge did not distinguish that the proof beyond is an issue of the credibility, the quality of the evidence presented. So he should have said more. If this was a tech he uses, then yes, there is more that must be said to explain. These are not the same. It's not simply a balancing test. Of course, the short way to handle it is you'll not bring any instructions or theory you have from any other case into this. You'll take the instructions of this little law from me as I give it to you, will you not, Mr. Juror? And the answer is either yes or no. Absolutely. If he says yes, you're home free. And I'll instruct you on everything that's instructable. You'll take my word for it, yes? Yes, Your Honor. Solves the problem. Yes. I don't say it's a constitutional mandate, it's common sense. I would like to think so, but we are here. What I do want to, as I see my time is winding down, I do want to make clear is that it's the position, Mr. Dorno, that the jurors in his case were reasonably likely, it is reasonably likely, that they understood in this case based on what the judge said to them at the outset to look at the events as a balancing of how much is presented by one side against the other. We don't know that that's what they did, but definite knowledge is not what's required. It's that it's reasonably likely, and that is reasonably likely, based on what was said, not what was not said, not what should have been said, but what was said to the jury. If there are no further questions, I'll just say thank you and ask that you affirm the lower court's decision. Thank you. Mr. Becker, your time had expired, I think, but I'll give you a minute to rebut if you have anything further. Two quick points in rebuttal. First, I would note that when it comes to the idea of discussing weighing of evidence and probabilities and things like that, in Victor, the Supreme Court did specifically uphold a definition. It didn't endorse it, but it upheld under the Due Process Clause in explanation of reasonable doubt in terms of the, quote, strong probabilities of the case. I would also note that if you're looking at this issue de novo, if you decide the case de novo in the state's favor, you need not necessarily reach whether a deference applies under the Early Against Packer Doctrine. With that, we thank you and ask you to reverse. Thank you. Our thanks to both counsel. The case is taken under advisement.